## UNITED STATES v. HARRISON. (Two Cases.)

*(District Court, D. California.    1887.)*

CUSTOMS DUTIES—INDICTMENT FOR FALSE SWEARING—EXISTENCE OF OTHER BILLS OF LADING.

The fact that at the time a person entered merchandise at the custom-house there were in existence. to his knowledge, several copies of the bills of lading and invoices presented by him. does not make his sworn statement, as required by Rev. St. U. S. § 2841, that he does not know of or believe in the existence of any invoices or bills of lading other than those produced by him, a false oath; as the other invoices or bills of lading intended by the statute are bills of lading or invoices different from those presented, and not merely the copies thereof which by commercial usage or statute are required to be procured.

Indictment for False Swearing with respect to a foreign entry of goods at the custom-house.

*John T. Carey,* U. S. Atty., and *H. C. McPike,* Asst. U. S. Atty., for the United States.

*Milton Andros,* for defendant.

HOFFMAN, J., *(charging jury.)* This defendant is indicted for false swearing. The facts of the case are not disputed. It is admitted that

he took, when entering certain merchandise at the custom-house, the owner's oath, in the form prescribed by law. This form requires him to swear that: "I do not know or believe in the existence of any invoice or bill of lading *other* than those now produced by me, and that they are in the state in which I actually received them." Rev. St. § 2841. When he took the oath there were in existence two other copies or counterparts of this bill of lading presented by him, the master of this vessel having, according to immemorial custom, affirmed to three bills of lading, "all of this tenor and date, one of which being accomplished the rest to stand void." This fact appeared on the face of the bill of lading presented. With respect to the invoice, the law required it to be made in quadruplicate, each copy to be certified by the United States consul at the port of shipment. Two of these copies are to be furnished to the party producing the invoice, one is to be retained by the consul, and the other is to be by him transmitted to the surveyor or collector at the port of delivery. The only question in this case is, did the fact that these copies or counterparts of the documents presented by the defendant were in existence (a fact, of course, well known to him and the deputy collector who administered the oath) make his sworn statement that he did not know or believe in the existence of any invoice or bill of lading "other" than those produced by him a false oath? It is plain to me that it did not. If it did, no entry of imported merchandise can be made at the custom-house by either owner or consignee without false swearing; for bills of lading, like bills of exchange, are always signed in several parts. And the *law* requires that invoices shall be certified by the consul in quadruplicate. It is evident that the other invoices or bills of lading, of the existence of which the party making the entry is obliged to swear he has no knowledge or belief, are bills of lading or invoices different from those presented by him, and not merely copies or counterparts of those instruments which by universal commercial usage or by express statute are required to be procured. By contemplation of law all the bills of lading or invoices constitute but one instrument in several parts, just as a lease by indenture wherein the lessor and lessee each retains a counterpart is but one deed. It is absurd to suppose that congress, when prescribing the form of oath to be taken by owners or consignees of imported merchandise, intended to make entry of the goods impossible without false swearing.

I direct you to render a verdict of not guilty.